2020 IL App (1st) 173014-U

FIFTH DIVISION
NOVEMBER 20, 2020

No. 1-17-3014

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 5097 |
| | ) | |
| ELIJAH GREEN, | ) | Honorable |
| | ) | Thomas Joseph Hennelly, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Justices Hoffman and Rochford concurred in the judgment.

**ORDER**

¶ 1  *Held:*  Defendant's conviction for delivery of more than 1 and less than 15 grams of heroin reversed, sentence vacated**,** conviction reduced to lesser included offense of delivery of a controlled substance, and case remanded for resentencing as evidence was insufficient to sustain conviction.

¶ 2  Defendant-appellant Elijah Green appeals his conviction for delivery of more than 1 and less than 15 grams of a controlled substance, heroin, for which he was sentenced to 12 years' imprisonment.  On appeal, he argues that (1) the evidence was insufficient to prove that the heroin he delivered weighed more than one gram; (2) the prosecutor made inflammatory remarks during

closing argument that amounted to plain error; (3) his trial counsel was ineffective for agreeing to continuances that deprived him of a material witness; and (4) his sentence was excessive. For the reasons that follow, we reverse the defendant's conviction and remand for resentencing.

¶ 3                                              BACKGROUND

¶ 4       The defendant was arrested on March 6, 2016, following an operation in which an undercover Chicago police officer purchased drugs from the defendant. The defendant was charged with one count of delivery of 1 gram or more but less than 15 grams of a controlled substance and one count of possession of 1 gram or more but less than 15 grams of a controlled substance with intent to deliver. The first trial date was set for October 2016, but defense counsel agreed to a continuance when the State announced that it was not ready. Defense counsel agreed to two more continuances in November 2016 and January 2017 because the State was not ready. At the trial dates in October, November, and January, Phenice Westbrook, a defense witness, was in court. But on the status dates between February and June, defense counsel informed the court that he was unable to contact Ms. Westbrook and asked for additional time to locate her. Eventually, a jury trial commenced on August 29, 2017, without Ms. Westbrook as a witness.

¶ 5       At trial, three police officers involved in the undercover operation testified as to the events of March 5, 2016. First, Officer Janelle Hamilton, an officer in the Chicago police department's organized crime division and narcotics unit, testified that while undercover, she approached the defendant where he was standing near 4405 West Congress Parkway and asked to purchase "defense," which was slang for heroin. The defendant told her to follow him, and walked with her to Buffalo Sam's, a restaurant approximately 100 feet away at 508 South Kostner Avenue. There, the defendant asked Officer Hamilton how much she wanted, and she responded that she wanted three bags of heroin. The defendant walked to the counter of the restaurant, reached into the crotch

of his pants, and pulled out a "strip of Ziploc bags that were connected with white tape." Inside the bags was a white powdery substance. The defendant removed three bags from the strip and gave them to Officer Hamilton. She paid for the bags with $30 in cash that had recorded serial numbers to facilitate tracking. When she exited the restaurant, she signaled to the surveillance officer that she had made a purchase.

¶ 6       The surveillance officer, Shane Jones, observed Officer Hamilton throughout her encounter with the defendant and testified consistently with her account. He further testified that after Officer Hamilton exited the restaurant, and before enforcement officers arrived to arrest the defendant, he observed the defendant engage in what appeared to him to be multiple drug transactions outside the restaurant. Officer Jones did not inform the other officers involved in the operation about these additional transactions, nor did he memorialize them in his report.

¶ 7       Officer Joseph Papke testified that he was an enforcement officer for the undercover operation and his role was to ensure the safety of the undercover and surveillance officers. When Officer Papke arrived at the restaurant on March 5, he observed that the defendant was temporarily detained while Officer Hamilton drove by to confirm that he was the individual from whom she had purchased the heroin. After Officer Hamilton made a positive drive-by identification, Officer Papke took the defendant into custody and performed a custodial search of the defendant's person, wherein he recovered five clear Ziploc baggies with white powder inside and $843 in cash. Officer Papke did not recover the marked $30 with which Officer Hamilton had paid the defendant.

¶ 8       Debra Bracey, a forensic scientist with the Illinois State Police, also testified for the State. She was permitted to testify as an expert in the field of forensic chemistry with no objection from defense counsel. Ms. Bracey testified that she received two bags of evidence inventoried by the Chicago Police Department. When she received the sealed evidence bags, she opened them and

counted the items inside. Inventory number 13639659 contained three "items," and inventory number 13639687 contained five "items." She testified that she weighed the items by zeroing the balance on her scale, placing the items on the scale, and reading the balance. As to the three items in inventory number 13639659, she testified that they weighed 1.5 grams, while the five items weighed 2.6 grams.

¶ 9    Ms. Bracey testified that she tested the items by way of a color test and a gas chromatography mass spectrometry test and found the items to be heroin. Upon completion of the test, she placed the white powder in small Ziploc bags and resealed them in the evidence bags.

¶ 10    The defendant rested without putting on any evidence, and his motion for a directed verdict was denied. In closing, the State argued that the defendant was a "drug dealer" who "profits from the illegal sale of heroin, a substance that causes sickness, death, and addiction." And in rebuttal, the State addressed reasonable doubt, explaining that it "is a burden of proof [] on every criminal case" and "[i]t is not some unreachable thing."

¶ 11    The jury found the defendant guilty of delivery of more than 1 but less than 15 grams of a controlled substance. Following a pre-sentence investigation, the defendant was sentenced to 12 years' imprisonment. His motion for a new trial was denied and the defendant appealed.

¶ 12                                ANALYSIS

¶ 13    We note that we have jurisdiction to review this matter, as the defendant timely appealed. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); Ill. S. Ct. R. 606 (eff. July 1, 2017).

¶ 14                          I. Sufficiency of the Evidence

¶ 15    On appeal, the defendant initially argues that the evidence was insufficient to prove that the heroin he was convicted of delivering to Officer Hamilton weighed more than one gram. A challenge to the sufficiency of the evidence requires us to consider whether, after viewing the

evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Baskerville*, 2012 IL 111056, ¶ 31. We will not substitute our judgment for the trier of fact's, nor will we reverse a conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 16 Where, as here, the defendant was charged with delivery of a specific amount of heroin, and there is a lesser included offense of delivery of a smaller amount, the State was required to prove beyond a reasonable doubt both that the substance recovered from the defendant was heroin *and* that it weighed 1 or more grams (and less than 15 grams). *People v. Wilkerson*, 2016 IL App (1st) 151913, ¶ 53; see also 720 ILCS 570/401(c)(1) (West 2016). The defendant in this case does not dispute that the State proved that the substance which he delivered to Officer Hamilton was, indeed, heroin. However, he disputes that the State proved, beyond a reasonable doubt, that the heroin weighed one or more grams.

¶ 17 To prove the weight of the heroin, the State relied on the testimony of Debra Bracey, a forensic scientist who was allowed to testify as an expert in forensic chemistry. At trial, Ms. Bracey began by testifying that she received two evidence bags from an evidence technician on March 6, 2016. One evidence bag contained the product that the defendant sold to Officer Hamilton (inventory number 13639659), while the other contained the product that the police recovered from the defendant at the time of his arrest (inventory number 13639867). Bracey then testified to the following steps:

"Q. What did you do next?

A. Next I opened up the evidence bag and counted the items.

Q. Did you count the number of items in inventory number 13639659?

A. Yes, I did.

Q. How many items were there?

A. Three items.

Q. Did you also count the items in inventory number 13639687?

A. Yes, I did.

Q. How many items did that contain?

A. Five items.

Q. Did you weigh the items?

A. Yes, I did.

Q. Explain how you did this?

A. I first zero my balance, then I place the items on the balance and get a reading from my balance.

Q. Was the equipment that you used properly working?

A. Yes it was.

Q. How do you know that?

A. Because I weekly perform a function check on my balance and yearly the balance is calibrated.

Q. As to inventory 13639659, what was the total weight?

A. The total weight was 1.5 grams.

Q. As to inventory 13639687 what was the total weight?

A. Total weight for both 2A and 2B was 2.6 grams.

Q. When you say 2A and 2B you joined them—I'm sorry—the five

items you separated as to 2A and 2B?

A. Yes, I did.

Q. And 2A consisted of three items?

A. Yes, it did.

Q. 2B consisted of two items.

A. Yes, it did."

¶ 18    The defendant maintains that there was no evidence that the weight Ms. Bracey calculated was limited to the weight of the powder and did not include the weight of the Ziploc bags. We agree. Ms. Bracey did not explicitly testify that she removed the heroin from the Ziploc bags prior to weighing it. Rather, she testified that she placed "items" from the evidence bags on the scale. While the State would have us read "items" to mean the heroin, alone, the testimony does not support this conclusion. Officer Hamilton testified that when she returned to the police station after identifying the defendant, she sealed the three *bags* of heroin the defendant sold her in a plastic bag labeled with an inventory number and sent it to the Illinois State Police for analysis. It was this plastic bag that Ms. Bracey received. And Ms. Bracey testified that she found three "items" in the evidence bag, which she weighed. The items, plainly, were the Ziploc bags of heroin that the defendant sold to Officer Hamilton. The only fair reading of Ms. Bracey's testimony is that she weighed the heroin while it was in the bags without taking into account the weight of the bags.

¶ 19    *People v. Cline*, 2020 IL App (1st) 172631, is instructive.    There, the defendant's conviction for residential burglary rested on testimony from a fingerprint examiner that a partial fingerprint recovered at the scene matched the defendant's fingerprint. *Id.* ¶ 1. The methodology

for comparing prints is referred to as "ACE-V," or analysis, comparison, evaluation, and verification, but the record in *Cline* was silent as to whether the fingerprint examiner in that case had verified his result. *Id.* ¶¶18, 21. This court rejected the State's argument that the record's silence allowed for the conclusion that verification had nevertheless taken place. *Id.* ¶¶ 31, 34. We explained that to adopt the State's argument would "drastically diminish[] its burden of proof in a criminal case" by allowing the State to "proceed by silence instead of presenting evidence to prove its case." *Id.* ¶ 34.

¶ 20    The State attempts to distinguish *Cline* on the grounds that there was some evidence that Ms. Bracey removed the heroin from the Ziploc bags. Specifically, after Ms. Bracey testified as to how she *tested* the substances in the small Ziploc bags, she stated that she "placed [the evidence] in small Ziploc bags and resealed them in the original evidence bag." The State argues that Ms. Bracey's testimony that she placed the evidence in the small Ziploc bags after testing necessarily implies that she removed the evidence (the heroin) prior to testing. But the problem with this argument is that it addresses Ms. Bracey's *testing* procedure, not her procedure for *weighing* the evidence. The record is, at best, silent as to whether she removed the heroin from the bags prior to weighing it. Read in context, the evidence in fact suggests that she did *not* remove the heroin from the bags before weighing it, given that she testified to weighing the *items* (bags), and not the substance (heroin) in the bags.

¶ 21    This is a major deficiency in the State's evidence. A silent record in these circumstances does not equate to the standard requiring the State to prove each and every aspect of the crime beyond a reasonable doubt. After all, the *weight* of the heroin is a crucial element of the crime. Thus, such an important factor cannot be left to inference, suggestions, speculation, or a silent

record. Instead, it must be supported by evidence beyond a reasonable doubt. Clearly, that did not happen in this case.

¶ 22   For this reason, we conclude that the evidence was insufficient to prove that the defendant delivered more than 1 gram of heroin but less than 15 grams. Accordingly, we reduce his conviction to the lesser included offense of delivery of a controlled substance (720 ILCS 570/401(d) (West 2016)) and remand the case to the trial court for resentencing on that offense.

¶ 23                                 II. Closing Argument

¶ 24   The defendant next argues that comments by the State referring to him as a drug dealer who profits from the sale of heroin, a substance that causes illness and death, during closing and rebuttal argument were prejudicial and require a new trial. The defendant acknowledges that he did not object to these comments at trial or address them in his posttrial motion, and as such, his argument that they were prejudicial is forfeited. See *People v. McDonald*, 2016 IL 118882, ¶ 45 (a defendant must both object at trial and include the issue in a posttrial motion to preserve it for review). However, the defendant argues that we may review his claim of error under the plain-error doctrine, which permits review of otherwise forfeited errors where the error is clear and obvious and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) the error is so serious that it affected the fairness of the defendant's trial. *People v. Sebby*, 2017 IL 119445, ¶ 48 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). The first step under either prong is to determine whether a clear and obvious error occurred, which we review *de novo*.[1] *People v. Downs*, 2015 IL 117934, ¶ 15.

---

[1] The parties argue over whether a *de novo* or abuse of discretion standard of review applies to a claim of prejudice in closing argument, but we need not resolve this dispute because we are applying the plain error doctrine, which carries its own standard of review.

¶ 25    A prosecutor is permitted wide latitude in making closing argument. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). Arguments that are based upon the facts in evidence, or upon reasonable inferences drawn from those facts, are proper. *People v. Anaya*, 2017 IL App (1st) 150074, ¶ 62. However, comments that have no other purpose than to arouse the prejudices and passions of the jury are not. *People v. McNeal*, 2019 IL App (1st) 180015, ¶ 43.

¶ 26    In this case, the defendant challenges the State's comment characterizing him as a drug dealer who "profits from the illegal sale of heroin, a substance that causes sickness, death, and addiction." But referring to the defendant as a drug dealer is supported by the evidence, which established that the defendant sold drugs to Officer Hamilton. See *People v. Chavez*, 327 Ill. App. 3d 18, 29 (2001) (finding that prosecutor's description of defendant as a "'smart drug dealer'" in closing argument was a reasonable inference based on evidence that revealed that police arrested defendant in possession of two kilograms of cocaine). And we have likewise held that prosecutors are "authorized to argue the evils of drug abuse[.]" *People v. Reid*, 272 Ill. App. 3d 301, 310 (1995).

¶ 27    The defendant also argues that the State compounded the alleged impropriety of these comments by defining reasonable doubt for the jury in its rebuttal argument. But this is not borne out by the record. In rebuttal, the State did not *define* reasonable doubt; it merely made reference to it. Specifically, the State argued that its burden was not "proof beyond any doubt" but "proof beyond a reasonable doubt" and that this burden was not "special to this case" but one that is "on every criminal case" and is "not some unreachable thing." We have long upheld similar comments. See, *e.g.*, *People v. Ligon*, 365 Ill. App. 3d 109, 125 (2006) (no error where prosecutor explained that reasonable doubt did not mean "'beyond all doubt'" and further stated that the burden was "'met every single day in courtrooms'"); *People v. Ward*, 371 Ill. App. 3d 382, (2007) (no error in

prosecutor's argument in rebuttal that State was not required to "'prove the defendant guilty beyond all doubt'" and that reasonable doubt burden was "'met everyday in every courtroom'"); *People v. Carroll*, 278 Ill. App. 3d 464, 468 (1996) (no error for prosecutor to argue that reasonable doubt was "'not some mythical, unattainable standard that can't be met.'")

¶ 28    Because we conclude that the State's comments during closing and rebuttal were not improper, we find that no error occurred justifying the application of the plain error doctrine.

¶ 29                                III. Ineffective Assistance of Counsel

¶ 30    Finally, the defendant argues that his trial counsel was ineffective for agreeing to trial continuances requested by the State that resulted in the unavailability of an allegedly material witness. The witness, Phenice Westbrook, was present at the first three scheduled trial dates, but after defense counsel agreed to a continuance in January 2017, counsel could not locate her for the trial in August.

¶ 31    In order to establish that counsel was ineffective, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's errors, there was a reasonable probability that the result of the proceedings would have been different. *People v. Talbert*, 2018 IL App (1st) 160157, ¶ 48 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Because a defendant must satisfy *both* prongs of the *Strickland* test before we may find counsel ineffective, if he fails to make a sufficient showing as to one prong, we need not address the second. *People v. Montgomery*, 192 Ill. 2d 642, 671 (2000).

¶ 32    Here, we need not determine whether counsel's performance was deficient where the defendant has not shown prejudice. The defendant does not identify what Ms. Westbrook's testimony would have been, which makes it impossible for us to determine whether that testimony would have changed the trial result. As such, his claim of ineffective assistance is better suited for

collateral proceedings. See *People v. Veach*, 2017 IL 120649, ¶ 47 (where issue depends on facts not found in the trial record, defendant may raise it on collateral review).

¶ 33    In an attempt to avoid this inevitable conclusion, the defendant urges us to view his claim of ineffective assistance as "structural error," arguing that counsel's acquiescence to continuances deprived him of his fundamental right to call witnesses in his defense.  Structural errors are those that "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009) (quoting *People v. Harmon*, 215 Ill. 2d 167, 186 (2005)).  In other words, "an error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *People v. Thompson*, 238 Ill. 2d 598, 609 (2010).  A structural error requires automatic reversal without the need to show prejudice.  *People v. Evans*, 2016 IL App (1st) 142190, ¶ 8.

¶ 34    In the first place, and as the defendant acknowledges, the Illinois Supreme Court has never found that ineffective assistance of counsel amounts to structural error. But more significantly, the defendant's argument begins from a false premise: he argues that we should find this error structural because its impact is "unknowable."  Not so.  As we discussed *supra*, the defendant may assert this alleged error in collateral proceedings, where he will be able to introduce evidence of what Ms. Westbrook would have testified to. And with that evidence, the court will be able to evaluate whether the defendant was prejudiced by her absence.  (Of course, in order to succeed on his claim of ineffective assistance, the defendant will also have to prove that counsel's decision to agree to a continuance amounted to deficient performance.)  Therefore, we reject the defendant's argument of ineffective assistance of counsel under these circumstances.[2]

---

[2] The defendant also argues that his sentence was excessive, but because we are remanding for resentencing on a lesser included offense, we need not address this argument.

¶ 35                                    CONCLUSION

¶ 36    For the reasons stated, we reverse the defendant's conviction for delivery of more than 1 and less than 15 grams of a controlled substance, vacate his sentence, reduce the conviction to the lesser included offense of delivery of a controlled substance, and remand the case for resentencing on that lesser included offense.

¶ 37    Reversed in part, sentence vacated, conviction modified, and case remanded to the circuit court for resentencing.