**2022 IL 126383**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126383)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN CLINE, Appellee.

*Opinion filed January 21, 2022.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant John Cline was convicted of residential burglary (720 ILCS 5/19-3(a) (West 2014)), following a bench trial in the circuit court of Cook County. The appellate court reversed his conviction because the only evidence tying him to the burglary was a fingerprint found on a portable headphone case inside the residence and there was no evidence that the State's fingerprint expert verified his results with another examiner. 2020 IL App (1st) 172631. For the following reasons, we reverse

the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 2                                                    BACKGROUND

¶ 3        Defendant was charged with a single count of residential burglary. A bench trial commenced on December 14, 2016.

¶ 4        At trial, Tom Slowinski testified that on September 1, 2015, he lived alone in a three-story, walk-up apartment at 4057 North Kedvale Avenue in Chicago. When he left home around 8:15 a.m., the front and back doors of his apartment were locked. He returned around 6:15 p.m. and found the front door ajar and scratched. Inside, Slowinski discovered that his apartment had been "ransacked" and "torn apart." After police arrived, he walked them through the two-bedroom apartment and identified various missing objects, including a laptop, a gun safe and four firearms, video games, and a pair of Shure headphones.

¶ 5        Referencing a photograph taken inside his apartment of a Shure headphone case, Slowinski testified that, when he left home on September 1, the headphones were in the metal case. When he returned, the case had been moved to the floor, and the headphones were gone. Slowinski testified that he did not know defendant and had not given him permission to enter his apartment. During cross-examination, he testified that he had traveled the week prior to the burglary and had given his apartment key to his friend, John Heroff, in case of an emergency. Slowinski did not know whether Heroff knew defendant.

¶ 6        Chicago police evidence technician Hiram Gutierrez testified that on September 2, 2015, he processed the headphone case. In photos he took, Gutierrez identified a "fingerprint ridge impression," which he lifted from the headphone case with clear plastic contact paper. He found no other prints or other forensic evidence inside the apartment. He acknowledged that the impression he recovered was "not a full print," if a full print was defined as "everything."

¶ 7        Chicago police officer Aaron Joy testified that on October 13, 2015, he took defendant's fingerprints. He did so by rolling each of defendant's fingers across a fingerprint scanner to ensure that the entire print was scanned from the left side all the way to the right side of each finger.

¶ 8 Chicago police detective Timothy O'Brien testified that on October 13, 2015, he interviewed defendant after his arrest. He asked defendant if he would have reason to be at 4057 North Kedvale Avenue or inside an apartment at that location. Defendant responded that " 'he would not be over in that area.' "

¶ 9 Chicago police officer Daniel Dennewitz testified that he had worked in the department's latent prints unit for about eight years. For approximately one year, he had analyzed, compared, and searched latent fingerprints. He testified that he had trained in this area at the Federal Bureau of Investigation Criminal Justice Information Services Center. He had also worked as an apprentice with the Chicago Police Department, during which time he took classes with experts in the field and passed annual proficiency examinations. Dennewitz testified that he had previously been qualified as an expert in fingerprint examination and identification approximately five times and had examined "thousands" of fingerprints during his career.

¶ 10 Defendant's attorney did not object to the admission of Dennewitz's testimony and declined to question him about his qualifications. The trial court found Dennewitz qualified to testify as a forensic expert in fingerprint identification.

¶ 11 Dennewitz began his testimony by generally explaining about the nature of fingerprints and specifically about latent prints. A latent print is one that is found at a crime scene that is hidden and needs to be processed. He testified that he reviewed the fingerprint lift recovered in this case. There were four latent prints on the lift. He determined that one was suitable for comparison because it had enough detail from which he could form an opinion.

¶ 12 Dennewitz compared the latent print to a known print of defendant's right middle finger and concluded that they came from the same source. He explained that he had diagrammed approximately 20 points of comparison and marked 9 of them on both prints. Dennewitz testified that he repeated his analysis by using the same identification procedure and compared a known standard of defendant's right middle finger with the latent print. He concluded within a reasonable degree of scientific certainty, based on his experience, training, and education, that the two prints came from the same source.

¶ 13    Defendant's attorney did not cross-examine Dennewitz regarding the methodology employed in positively matching the prints. Instead, he questioned him concerning the completeness of the latent print recovered from the headphone case. Dennewitz testified that a full fingerprint is "from one side of the fingernail to the next side of the fingernail. From the top of the fingernail down to the first joint area which would be the crease." Dennewitz acknowledged that the latent print recovered at the scene in this case, in contrast to defendant's known print, only showed a portion of the finger. Dennewitz testified that, had the latent print included those missing portions, he would assume those portions would also match defendant's known print.

¶ 14    Defendant did not present any evidence.

¶ 15    Defendant was found guilty of residential burglary. The trial court found that Slowinski did not give defendant permission to be inside his apartment and, while defendant denied being there to police, his fingerprint was identified on the metal headphone case. The trial court also found the evidence showed that, although one side of the impression was identified on the headphone case as belonging to defendant, it was safe to assume that the missing portion of the latent print would also match defendant's right middle finger.

¶ 16    Defendant, represented by new counsel, subsequently moved for a new trial. He alleged, in pertinent part, that his trial counsel, John Paul Carroll, was ineffective for not vigorously cross-examining Dennewitz to undermine his conclusion that the fingerprint belonged to defendant. Defendant did not challenge the lack of evidence that Dennewitz verified his results with another fingerprint examiner.

¶ 17    At the posttrial hearing, Carroll testified that prior to trial he reviewed the discovery provided by the State and developed a defense strategy. It was twofold. First, he sought to convince the court that Dennewitz assumed "the other part of the fingerprint belonged to [defendant]" and, thus, had not made a "positive identification." To achieve that goal, he asked Dennewitz whether he had simply assumed the missing part of the print belonged to defendant. Second, Carroll testified that he attempted to show the State failed to prove defendant was not a guest of Slowinski's friend the week prior to the burglary and that it was thus impossible to determine when defendant's fingerprint appeared on the headphone case.

¶ 18     In denying the posttrial motion, the trial court stated that no one had "presented any evidence that the fingerprint examiner [wa]s incompetent." The trial court sentenced defendant to eight years in prison.

¶ 19     On appeal, defendant asserted that the evidence was insufficient to find him guilty beyond a reasonable doubt of residential burglary. Defendant argued that the only evidence tying him to the offense consisted of a single, partial fingerprint on a portable object. Additionally, the State did not offer evidence that Dennewitz followed the accepted methodology for identifying latent fingerprints by verifying his results with another examiner. The appellate court agreed and reversed his conviction. 2020 IL App (1st) 172631, ¶¶ 28-29.

¶ 20     Relying upon *People v. Luna*, 2013 IL App (1st) 072253, the appellate court took judicial notice of the " 'ACE-V' " method of fingerprint analysis as the widely accepted method of fingerprint identification. 2020 IL App (1st) 172631, ¶¶ 18-19. The appellate court noted the ACE-V method requires four steps: (1) analysis, (2) comparison, (3) evaluation, and (4) verification. *Id.* ¶ 18. Pertinent to defendant's argument, the verification step requires that another examiner repeat the first three steps conducted by the initial examiner. *Id.* Because the State did not elicit testimony from Dennewitz that he followed the fourth step, the appellate court found that reversal was warranted. *Id.* ¶ 21. The court concluded the State's evidence was insufficient, as it rested solely on a "flawed examination of a single, incomplete fingerprint." *Id.* ¶ 28.

¶ 21     Justice Walker specially concurred. *Id.* ¶¶ 37-40 (Walker, J., specially concurring). He agreed that the evidence was insufficient because the fingerprint analysis was not verified by another examiner. *Id.* ¶ 38. He also would have found the evidence insufficient because the State failed to establish the temporal proximity of the fingerprint to the burglary. *Id.* He noted that Slowinski did not testify that he had never taken the headphone case out of his apartment. *Id.* ¶ 40. Given the nature of headphones and a headphone case, Justice Walker reasoned that Slowinski may have carried the headphone case in public, dropped it, and had it returned to him as a courtesy, and that person would thereby have left a print on it. *Id.* Consequently, he believed that a reasonable person could not conclude that the partial fingerprint must have been made during the burglary. *Id.*

- 5 -

¶ 22     This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019). The Innocence Project and Professor Brandon Garrett were granted leave to file an *amicus curiae* brief in support of defendant's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 23                                    ANALYSIS

¶ 24     The State contends that the appellate court erred in holding that the fingerprint evidence was insufficient to establish beyond a reasonable doubt that defendant committed residential burglary.

¶ 25     It is well settled that, when reviewing a challenge to the sufficiency of the evidence, a reviewing court must determine whether, " ' "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis omitted.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008) (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). All reasonable inferences from the evidence must be drawn in favor of the prosecution. *People v. Hardman*, 2017 IL 121453, ¶ 37. This court will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 26     A person commits residential burglary when he or she knowingly and without authority enters or remains within the dwelling of another with the intent to commit therein a felony or theft. See 720 ILCS 5/19-3(a) (West 2014).

¶ 27     Slowinski's testimony was sufficient to establish the *corpus delicti* of residential burglary. He testified that, when he left his apartment on the morning of the crime, the doors were both locked. When he returned home that evening, he observed signs of a forced entry and discovered that his apartment had been ransacked. He testified that several items were missing, including headphones that had been removed from a metal case. Consequently, defendant does not dispute that the evidence was sufficient to show that someone knowingly entered Slowinski's apartment without authority and with the intent to commit theft there.

¶ 28 The parties agree that the central issue in this appeal concerns the weight of the fingerprint evidence linking defendant to the burglary. The State argues that Dennewitz's testimony established that defendant's fingerprint was found on the headphone case and that the credibility of this conclusion is not contingent on corroboration by a second expert.

¶ 29 Defendant does not challenge the admissibility of Dennewitz's expert testimony. Instead, he contends that, while it was properly admitted, without proof that his conclusion was verified by another examiner, the State "failed to prove" Dennewitz followed the "accepted" ACE-V analytical method for fingerprint identification.[1] Defendant insists that, by missing this key analytical step, the conclusion by the State's expert cannot be afforded any weight. In making this argument, defendant asks this court to take judicial notice of the ACE-V method as the standard analytical procedure followed by forensic fingerprint examiners.

¶ 30 Defendant, like the appellate court below, relies upon *Luna*. There, the defendant was convicted of murder surrounding the deaths of seven people at a restaurant. *Luna*, 2013 IL App (1st) 072253, ¶ 1. On appeal, he argued, *inter alia*, that the trial court erred in denying his motion *in limine* to exclude expert testimony that his palm print matched a partial latent print found on a napkin in the restaurant. *Id.* ¶ 49 The defendant asserted that the method used by the expert to match his known print to the latent print was not generally accepted in the relevant scientific community and therefore, under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), the expert testimony should have been excluded. *Luna*, 2013 IL App (1st)

---

[1]ACE-V is an acronym for analysis, comparison, evaluation, and verification. The process has been described in summary as beginning with

" 'the analysis of the unknown friction ridge print (now often a digital image of a latent print). *** If the examiner deems that there is sufficient detail in the latent print (and the known prints), the comparison of the latent print to the known prints begins.
    Visual comparison consists of discerning, visually "measuring," and comparing—within the comparable areas of the latent print and the known prints—the details that correspond. ***
    At the completion of the comparison, the examiner performs an evaluation of the agreement of the friction ridge formations in the two prints and evaluates the sufficiency of the detail present to establish an identification (source determination). *** Verification occurs when another qualified examiner repeats the observations ***.' " *United States v. Herrera*, 704 F.3d 480, 484 (7th Cir. 2013) (quoting Nat'l Research Council of the Nat'l Acads., *Strengthening Forensic Science in the United States: A Path Forward* 137-38 (2009), https://www.ncjrs.gov/pdffiles1/nij/grants/228091.pdf [https://perma.cc/KMC9-7WG3]).

072253, ¶ 49. The defendant alternatively argued that the trial court should have held a *Frye* hearing to determine whether friction ridge analysis is a generally accepted technique within the relevant scientific community. *Id.*

¶ 31    The *Luna* court held that the trial court did not err by taking judicial notice of the general acceptance within the relevant scientific community of the ACE-V method used to match a known fingerprint to a latent fingerprint and therefore a *Frye* hearing was not required prior to admission of the expert testimony. *Id.* ¶¶ 66, 81. The appellate court noted that the defendant had not cited any published opinion suggesting that the ACE-V methodology is not generally accepted within the relevant scientific community or holding that finger or palm print evidence is inadmissible, and that the overwhelming conclusions by the courts had been that such evidence is admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), or *Frye*. *Luna*, 2013 IL App (1st) 072253, ¶ 69.

¶ 32    *Luna* and the other cases relied upon by defendant do not inform our decision here. In marked contrast, the central issue in this appeal does not concern the admissibility of evidence but, rather, a challenge to the sufficiency of evidence in light of the methodology employed by the State's fingerprint expert. We note that Dennewitz was not asked, and did not testify, as to whether another examiner repeated the steps conducted by him. We further note that defendant did not attempt to show through cross-examination any flaws in Dennewitz's methodology in reaching his conclusion that the two prints matched. Similarly, defendant did not challenge the lack of evidence of verification by another examiner in his posttrial motion. Instead, defendant is now asking this court to take judicial notice of extra-record materials for the purpose of evaluating the evidence presented at trial. Our review of the sufficiency of the fingerprint evidence in this case, however, must be limited to evidence actually admitted at trial, and judicial notice cannot be used to introduce new evidentiary material not considered by the fact finder during its deliberations. See, *e.g.*, *People v. Barham*, 337 Ill. App. 3d 1121, 1130 (2003).

¶ 33    We recognize the importance of preventing errors based on fingerprint evidence, particularly in a case such as this where there is no other evidence linking defendant to the crime. However, defendant's argument, like the reasoning of the appellate court below, wholly ignores the role of a reviewing court in considering the sufficiency of the evidence. It is not the function of a court of review to retry a

defendant (*People v. Evans*, 209 Ill. 2d 194, 209 (2004)), nor is it permissible for a reviewing court to take judicial notice of material that was not considered by the trier of fact in weighing the credibility of an expert witness's testimony.

¶ 34    In *People v. Rhodes*, 85 Ill. 2d 241 248-49 (1981) (quoting *Devine v. Delano*, 272 Ill. 166, 179-80 (1916)), this court explained in the context of fingerprint evidence that " '[c]ircumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind.' " Circumstantial evidence is generally sufficient to support a conviction if it is inconsistent with any reasonable hypothesis of innocence, but the trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *Id.* at 249. This court further explained that fingerprint evidence is circumstantial evidence that attempts to connect the defendant to the offense alleged. *Id.* "[T]o sustain a conviction solely on fingerprint evidence, fingerprints corresponding to the fingerprints of the defendant must have been found in the immediate vicinity of the crime under such circumstances as to establish beyond a reasonable doubt that the fingerprints were impressed at the time the crime was committed." *Id.*

¶ 35    The State contends, consistent with *Rhodes*, that the fingerprint evidence in this case was sufficient to establish that defendant was the burglar because it showed that his fingerprint was found (1) in the immediate vicinity of the crime and (2) under such circumstances as to establish beyond a reasonable doubt that the fingerprint was impressed at the time the crime was committed. We agree.

¶ 36    Dennewitz was found qualified by the trial court to testify as an expert in forensic fingerprint identification. He reviewed the fingerprint lift recovered by police from the headphone case and determined that one latent print was suitable for comparison because it had enough detail from which he could form an opinion. He diagrammed approximately 20 points of comparison between the latent and known prints and marked 9 of them on both. He compared that latent print to a known print of defendant's right middle finger. He concluded that they came from the same source. He then repeated his analysis by using the same identification procedure and compared a known standard of defendant's right middle finger with the latent print. Dennewitz concluded within a reasonable degree of scientific

certainty, based on his experience, training, and knowledge, that the two prints came from the same source. Based upon this fingerprint evidence, a rational trier of fact could have concluded that defendant left his fingerprint on the headphone case at the time of the crime.

¶ 37 Defendant makes two other arguments concerning the sufficiency of the evidence, which are also unpersuasive. He challenges the trial court's reliance on Dennewitz's testimony because he described the latent print used for comparison as "partial" and admitted to extrapolating a conclusion about the missing portion of the latent print by making an assumption. The State asserts that this argument ignores the role of the trial court in weighing the evidence and would render virtually all fingerprint evidence unreliable unless the individual rolled his entire fingertip across a surface at the crime scene.

¶ 38 Here, Dennewitz testified that a full fingerprint stretches from one side of the fingernail to the other, and from the top of the fingernail down to the crease of the first joint. He acknowledged that the latent print recovered from the headphone case, in contrast to defendant's known print, only showed a portion of the finger. Had the latent print included the missing portions, he would assume they would also match the known print of defendant.

¶ 39 The trial court, in determining defendant's guilt, found Dennewitz's testimony credible and recognized that defendant's print had been identified on the metal headphone case in the burgled apartment. The court further recognized that, while the evidence showed that only one side of the impression was identified on the case as belonging to defendant, it would naturally be assumed that the missing portion of the latent print would also match defendant's right middle finger. The court also noted, in denying defendant's posttrial motion, that no one had presented any evidence that the fingerprint examiner was incompetent. This credibility determination was well within the province of the trier of fact, and we do not substitute our judgment for that of the trier of fact on issues involving the weight of evidence or the credibility of witnesses. *People v. Jackson*, 2020 IL 124112, ¶ 64.

¶ 40 Finally, we address defendant's claim that, even if Dennewitz's testimony was sufficient to link him to the headphone case, the State offered no evidence that he left the partial print on the headphone case during the burglary. Consistent with the

special concurrence below, defendant claims that, because the latent print was found on such an easily moveable object and there was no evidence that his print was found elsewhere in the apartment or that he possessed any of the items taken, the evidence was insufficient to establish that the print was left at the time of the burglary.

¶ 41 Slowinski testified, however, that he did not know defendant and that on the morning of the crime the headphones had been left in a metal case in his locked apartment. The headphones were gone when he returned, and the metal case had been moved to the floor. Defendant's print was found on the case that had been left behind. Defendant told police that he had not been in the area of Slowinski's apartment building. The trial court's finding that defendant left the print during the burglary, rather than at some other time when he may have had a chance encounter with Slowinski's headphone case that also involved him touching it, was within its province as the trier of fact. It was not such an unreasonable inference that the print was left during the burglary as to somehow warrant reversal of defendant's conviction. In weighing evidence, the trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *Hardman*, 2017 IL 121453, ¶ 37.

¶ 42 In viewing the evidence in the light most favorable to the State, we find that it was not so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of defendant's guilt of residential burglary. See *Wright*, 2017 IL 119561, ¶ 70.

CONCLUSION

¶ 43 Accordingly, the judgment of the appellate court is reversed, and defendant's conviction for residential burglary is affirmed.

¶ 44 Appellate court judgment reversed.

¶ 45 Circuit court judgment affirmed.