2023 IL App (1st) 210450-U

No. 1-21-0450

Order filed August 1, 2023

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 DV 80766 |
| | ) | |
| JUANITA TYLER, | ) | Honorable |
| | ) | Laura Bertucci Smith, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Evidence was sufficient to convict defendant of domestic battery.

¶ 2    Following a bench trial, defendant Juanita Tyler was convicted of domestic battery, sentenced to one year of conditional discharge, and ordered to register as a violent offender against youth. On appeal, defendant contends that the trial evidence was insufficient to prove her guilty beyond a reasonable doubt because the complainant's testimony was not credible. We affirm.

¶ 3    Defendant was charged by misdemeanor complaint with domestic battery for intentionally causing bodily harm to J.C., a family member and a minor, by striking him about the body on or about September 20, 2018, at George W. Tilton Elementary School (Tilton) in Chicago. See 720 ILCS 5/12-3.2(a)(1) (West 2018). Kristen Haynes, J.C.'s homeroom teacher at Tilton, was charged with battery and child endangerment of J.C. and tried in a simultaneous severed bench trial.[1]

¶ 4    The State filed a pretrial motion to admit evidence of statements by J.C. pursuant to section 115-10 of the Code of Criminal Procedure (725 ILCS 5/115-10 (West 2018)) regarding physical or sexual abuse of persons under age 13. Following a hearing, the court allowed, in relevant part, J.C.'s statement to Deisy Anaya, an investigator with the Department of Children and Family Services (DCFS).

¶ 5    At trial, Joseph C. testified that his children, J.C. and N.C., attended Tilton in September 2018.[2] Defendant is Joseph's maternal aunt, meaning she is J.C.'s and N.C.'s great aunt. J.C. and N.C. had not seen defendant since they were one or two years old. Joseph did not give defendant permission to visit J.C.'s school on September 20, 2018, nor had he listed defendant with the school as an emergency contact.

¶ 6    On cross-examination, Joseph acknowledged that J.C. had some disciplinary issues at school and that Haynes called Joseph on September 19, 2018. That day, Joseph went to school and discussed J.C.'s behavior with Haynes and other school staff. Later that day, Haynes called Joseph and asked him to return to school on September 20, 2018, but he could not due to work. He denied

---

[1] Haynes was acquitted and is not a party to this appeal.

[2] As this order does not identify the minors J.C. and N.C. by their full names, we will also refer to their father, Joseph C., by his first name or by his first name and last initial.

sending defendant to J.C.'s school instead, and he did not tell anyone that he could not attend the meeting on September 20, 2018.

¶ 7    Asia Gaines, mother of J.C. and N.C., testified that they were 9 and 10 years old, respectively, in 2018. Tiara Taylor, Gaines's sister, had a child who attended Tilton with J.C. and N.C. and would bring them to and from school. When J.C. and N.C. were enrolled in school, Gaines listed Taylor and Joseph as their emergency contacts. She did not list defendant as a contact. Defendant did not have a relationship with J.C. or N.C. and, to the best of Gaines's knowledge, did not meet them before September 20, 2018.

¶ 8    On September 20, 2018, Gaines saw J.C. before school, and he had no visible injuries. Taylor called Gaines that afternoon, after Taylor picked up the children from school, which prompted Gaines to call and exchange texts with Haynes and to call the police. That evening, police spoke with J.C. and photographed him. Gaines took J.C. to the hospital on the evening of September 21, 2018.

¶ 9    At trial, Gaines identified certain photographs as depicting injuries that she saw on J.C.'s back and thigh on the evening of September 20, 2018. The photographs, which were entered into evidence, are in the appellate record and have been viewed by this court. They show two reddish linear marks on J.C.'s body and a reddish linear mark on his upper leg or thigh.

¶ 10    On cross-examination, Gaines denied disliking defendant or that she "keyed" defendant's car. On redirect examination, Gaines testified that on September 18, 2018, she met with Haynes and the Tilton principal in Haynes's classroom, where Haynes showed her two belts.

¶ 11    Beatrice Starks, a security officer at Tilton, testified that her duties included checking in visitors and having them sign a logbook. On September 20, 2018, Haynes told Starks that there

would be a meeting regarding J.C. that day and "the aunt" was expected. Later that day, Starks checked in a visitor who signed the logbook as Juanita Tyler. Starks did not identify defendant at trial but recognized a logbook entry indicating that Juanita Tyler arrived to meet Haynes.

¶ 12    N.C., age 11 at trial, testified that she and J.C. had been in Haynes's fourth grade class. On September 20, 2018, she and J.C. arrived at school together, but J.C. did not enter Haynes's classroom with N.C. N.C. asked Haynes where J.C. was, and Haynes told her to sit down. At one point, N.C. heard J.C. from the hallway saying, "What did I do?" in a scared voice. Eventually, J.C. entered the classroom. When asked if anyone accompanied J.C., N.C. replied, "I don't know." She later clarified that she was not paying attention when he entered.

¶ 13    Initially, N.C. testified that, other than Haynes, she "never talked to anybody else" whom she recognized in the courtroom. She then testified that Haynes told her that "the lady" wanted to see her, so N.C. went into the hallway. There, a woman offered N.C. $10 to share with J.C. N.C. did not talk to the woman or accept the money, but returned to the classroom. N.C. had never seen the lady before and did not know her name, but identified her in court as defendant. After school, N.C. was picked up by Taylor. On cross-examination, N.C. testified that she did not see J.C. in the hallway or with defendant.

¶ 14    J.C., age 10 at trial, testified that Haynes was his fourth-grade teacher. On September 20, 2018, J.C. was going to class when Haynes, and a woman he had never seen before, stopped him outside the classroom. At trial, J.C. identified defendant as that woman. Haynes and defendant led J.C. to a washroom, walking on either side of him. He asked Haynes what he had done; Haynes told him that he knew what he had done, and defendant slapped him on the mouth. J.C. responded that he "didn't do nothing." At the washroom, defendant grabbed J.C.'s left arm. He tried to pull

away, but Haynes grabbed his right wrist. Defendant was carrying two belts, one brown and the other black. Haynes opened the washroom door and then walked away, leaving defendant with J.C. in the washroom.

¶ 15    Defendant told J.C. to pull down his pants, but he refused. Defendant then struck his back and thigh with a belt multiple times. He cried for his mother, and defendant exclaimed, "I am your mama" and told him again to lower his pants. When he said no, she repeatedly struck him with a belt. Defendant ordered him to lower his pants a third time, and when he refused, she again struck him with the belt. She then led him by the wrist to his classroom. J.C was crying, but Haynes, who was outside the classroom, said he was laughing. Defendant struck his buttocks with the belt. Defendant told J.C. to respect Haynes because she and Haynes "grew up together." Defendant then led him to his seat and returned the belts to Haynes, who put them in the classroom closet. J.C. knew the belts belonged to Haynes because she had shown them to his mother in his presence. Before leaving, defendant told N.C. to join her in the hallway. N.C. did so, returning to the classroom afterwards.

¶ 16    After school, J.C. and N.C. were picked up by Taylor. J.C. told Taylor what happened, but did not tell anyone at school because he believed they would not help him. Once J.C.'s mother came home after work, the police arrived and J.C. told them what occurred. In the following days, J.C. and his mother met with the principal, and J.C. later told someone from DCFS what had happened. He also went to a hospital and described the events. Haynes was not J.C.'s teacher after September 20, 2018.

¶ 17    On cross-examination, J.C. testified that his mother helped him dress on the morning of September 20, 2018. Defendant said nothing when she grabbed him to lead him to the washroom.

He denied that defendant tried to give him money that day. When J.C. and N.C. were picked up by Taylor, N.C. also told Taylor what had happened. On redirect examination, J.C. testified that nobody told him what his testimony should be.

¶ 18    Chicago police detective Alice Casanova testified that she and another detective went to J.C.'s home on September 21, 2018, and spoke with Gaines and J.C.; Taylor and N.C. were also there.[3] On September 24, 2018, Casanova and her partner went to Tilton, where they interviewed Haynes. Haynes showed the detectives two belts stored in the classroom closet. Casanova's partner took the belts, which Casanova identified at trial. The detectives arrested Haynes that day.

¶ 19    On September 28, 2018, after defendant's arrest, Casanova and her partner met with defendant and gave her warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant agreed to an interview. Defendant said that Haynes called her to report "problems" with J.C., so defendant went to his school, signed in, and was directed to Haynes's classroom. There, Haynes gave her two belts from the classroom closet. When J.C. and N.C. arrived, they greeted and hugged defendant. Haynes put her hand over J.C.'s mouth. Defendant initially denied being alone with J.C., but then told the detectives she was in the washroom with J.C. and had the belts only to scare him. Casanova asked defendant whether she struck J.C., and defendant "denied" doing so or responded, "I don't recall."

¶ 20    On cross-examination, Casanova testified that she summarized defendant's statement rather than recording it or asking her to sign a written copy.

¶ 21    Anaya testified that she interviewed J.C. in his home on September 21, 2018, after interviewing other family members. She interviewed him alone, and his answers were age-

_____

[3] Casanova testified that she was retired at the time of trial.

appropriate. Anaya also looked over J.C.'s limbs, torso, back, and stomach in his mother's presence. At trial, she identified photographs depicting injuries that she independently recalled seeing on J.C.: two linear reddish marks to his left shoulder, a round or half-oval reddish mark on his right neck, and a linear mark on his back right thigh. Two of these photographs were entered into evidence and show two linear reddish marks on J.C.'s left shoulder blade and a round reddish mark on the back of his neck.

¶ 22    When Anaya asked J.C. if something had happened recently at school, he replied that, when he arrived at school with N.C. the previous day, a "lady" he never saw before was waiting with Haynes outside his classroom and pulled him aside. The lady asked him what he did and Haynes said he knew what he did. The lady then "started popping him in the mouth," or "smack[ing]" him, more than once. Haynes then gave the lady a black belt and a brown belt from the classroom, and Haynes and the lady grabbed his arms and pulled him to the washroom. J.C. told Anaya that Haynes kept the belts to "scare" students, saying, "they are there for anyone's mom who may need it." N.C. started to leave her seat when she saw Haynes and the lady lead J.C. away, "but she was told to sit back down." J.C. and the lady were in the washroom alone, and she told him to remove his pants. When he did not, she repeatedly "whacked him with *** the belts." He screamed and cried for his "mamma," and the lady responded that she was his "mamma."

¶ 23    J.C. told Anaya that after the incident, the lady and J.C. returned to the classroom, where he saw Haynes again. Haynes said that J.C. was laughing, so the lady struck him again with the belts. When Anaya asked if he had any injuries, J.C. said he had a mark on his shoulder and that his "butt" hurt. In Anaya's interview, J.C. consistently referred to the woman who struck him as "the lady" and stated that he did not know her.

¶ 24 In November 2018, Anaya interviewed defendant, who told Anaya that she had seen J.C. and N.C. at family gatherings and Joseph had brought them to her home. Defendant denied hitting J.C. She explained that she went to J.C.'s school on September 20, 2018, at Haynes's request, to discuss his disciplinary issues alongside Joseph, who did not appear. Defendant nonetheless entered the school because she had a frequent need to use the washroom. When she entered, school staff asked her to meet Haynes outside her classroom. J.C. and N.C. arrived and hugged defendant. Haynes and J.C. led defendant to the washroom while N.C. entered the classroom. J.C. stayed outside the washroom and Haynes returned to her classroom. Afterwards, defendant lectured J.C. about his behavior and "offered him or gave him money" to reward his future good behavior. During this discussion, defendant asked J.C. about belts that defendant had observed draped around Haynes's neck. Back at the classroom, defendant spoke with N.C., promising to bring her money later. Defendant then left the school.

¶ 25 For the defense, LaVita Buckner testified that she taught at Tilton in 2018 and knew Haynes as a colleague.[4] Haynes kept belts in her classroom closet to lend to students whose pants were sagging. At the beginning of the school day on September 20, 2018, Buckner was walking down a hallway and met Haynes, who was walking with J.C. and another woman. J.C. and the woman were holding hands while Haynes was walking in front of them. No one carried a belt. Buckner asked J.C. who the woman was, and he said she was his aunt. As Buckner walked away, she did not hear any commotion or screaming.

---

[4] Buckner was called and examined by Haynes's counsel, but counsel for defendant adopted Buckner's direct examination.

¶ 26    On cross-examination, Buckner acknowledged being interviewed by Anaya and saying that J.C. sometimes referred to Haynes as his aunt. On redirect examination, Buckner testified that J.C. was looking at the woman, not Haynes, when he said she was his aunt.[5]

¶ 27    Charlene Haynes testified that she taught at Tilton and knew Haynes, but was not related to her.[6] About 9 a.m. on September 20, 2018, Charlene saw J.C. and N.C. Neither was crying or distressed, and neither told Charlene that he or she had anything to report. J.C. had no visible injuries. Charlene denied ever seeing belts in the classroom.

¶ 28    On cross-examination, Charlene acknowledged that she did not lift J.C.'s shirt or examine him. Charlene worked closely with Haynes. When asked if she would want to see Haynes in trouble, she replied that she would want what is fair and right.

¶ 29    In rebuttal, the State entered a stipulation that if called, Anaya would testify that Buckner told her she was unaware of the details of the incident with J.C. Buckner said she saw J.C. holding hands with an older woman, but did not see any belts or anything inappropriate.

¶ 30    Following closing arguments, the court found defendant guilty of domestic battery. The court found that J.C. was not impeached regarding what happened in the washroom, and his testimony was consistent with his statement to Anaya. Defendant's statements to Anaya and Casanova placed her at school with J.C. and with the belts, and her statement to Casanova also placed her in the washroom with J.C. The court noted evidence that J.C. had linear marks on his body and concluded that no evidence suggested he had a motive to lie.

---

[5] Counsel for defendant did not expressly adopt this redirect examination by Haynes's counsel.

[6] As Charlene Haynes has the same last name as Kristen Haynes, we will refer to her by her first name. Counsel for defendant conducted a direct examination of Charlene, but also adopted the direct examination by counsel for Haynes.

¶ 31 Following a hearing *instanter*, the court sentenced defendant to one year of conditional discharge and required her to register as a violent offender against youth. Defense counsel did not file a motion to reconsider the sentence, but subsequently filed a posttrial motion challenging the sufficiency of the evidence, which the court denied.

¶ 32 On appeal, defendant contends that the trial evidence was insufficient to prove her guilt beyond a reasonable doubt of domestic battery because J.C. was not credible.

¶ 33 When the sufficiency of trial evidence is at issue, we must determine whether, taking the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. All reasonable inferences from the evidence must be made in the State's favor. *Id.*

¶ 34 It is the responsibility of the trier of fact to weigh the evidence, resolve conflicts, and draw reasonable inferences; we do not substitute our judgment for that of the trier of fact or retry the defendant. *Id.* ¶¶ 33, 39; *People v. Jackson*, 2020 IL 124112, ¶ 64. The trier of fact assesses witness credibility and, having observed the witnesses testifying, is better positioned than this court to do so. *Jackson*, 2020 IL 124112, ¶¶ 66, 69. The positive and credible testimony of a single witness is sufficient to sustain a conviction even if the defendant contradicts it. *People v. Harris*, 2018 IL 121932, ¶ 27. A witness's credibility is not necessarily destroyed by contradictions, as "it is the task of the trier of fact to determine when, if at all, [a witness] testified truthfully" and to decide how flaws in aspects of the testimony affect the credibility of the whole. *People v. Gray*, 2017 IL 120958, ¶ 47.

¶ 35 A trier of fact is not required to disregard inferences that flow normally from the evidence, or to seek all possible explanations consistent with innocence and elevate them to reasonable

doubt. *Cline*, 2022 IL 126383, ¶ 41. If the evidence as a whole satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt, it need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. *Jackson*, 2020 IL 124112, ¶ 70. A conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *Cline*, 2022 IL 126383, ¶ 25.

¶ 36     In order to sustain defendant's conviction for domestic battery, the State was required to prove that she knowingly and without legal justification caused bodily harm to J.C., a family member. 720 ILCS 5/12-3.2(a)(1) (West 2018). Defendant does not challenge any particular element of the offense but contends that her conviction should be reversed because J.C.'s credibility is questionable, especially regarding the circumstances and events preceding defendant entering the washroom.

¶ 37     After reviewing the evidence in the light most favorable to State, we find it sufficient to sustain defendant's conviction for domestic battery. Defendant essentially asks this court to substitute our judgment for that of the trier of fact on matters of witness credibility. This we cannot do. *Jackson*, 2020 IL 124112, ¶¶ 66, 69. Here, the trial court accepted J.C.'s clear testimony that defendant, whom he identified at trial, struck him repeatedly with a belt in the washroom at his school on the morning of September 20, 2018. The day after the incident, he gave the same account to a DCFS investigator, Anaya, though he did not identify defendant by name.

¶ 38     The aspect of J.C.'s account inculpating defendant of domestic battery was amply corroborated. First, Anaya and J.C.'s mother, Gaines, testified to seeing linear marks and a half-oval mark on J.C. on September 20 and 21, 2018, and identified photographs of those marks at trial. Gaines also testified that J.C. did not have those marks before school on the day in question.

Therefore, evidence beyond J.C.'s testimony clearly established that someone repeatedly struck him with a belt on that day.

¶ 39    Secondly, Anaya and Casanova testified that defendant admitted she was with J.C. at his school on the day in question and knew of Haynes's belts. Defendant also told Casanova that she was in the washroom with J.C. and the belts. The trier of fact could reasonably give weight to these aspects of defendant's statements while not crediting her denials that she hit J.C. Moreover, defendant's out-of-court statements were corroborated not only by J.C.'s account, but by the school logbook described by Starks, which placed defendant at school on the morning in question, and by the recovery of belts from Haynes's classroom as described by Casanova. Thus, evidence corroborated that defendant struck J.C. with a belt on September 20, 2018, as he testified.

¶ 40    In conclusion, we find the evidence that defendant committed domestic battery against J.C. was not so unreasonable, improbable, or unsatisfactory that reasonable doubt of her guilt remains. *Cline*, 2022 IL 126383, ¶ 25. Accordingly, the judgment of the circuit court is affirmed.

¶ 41    Affirmed.