**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240387-U

Order filed May 27, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0387 Circuit No. 22-CF-1 |
| | ) | |
| DOMINICK V. JOHNSON, | ) ) | Honorable Daniel P. Guerin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Hettel and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The evidence was sufficient to sustain the defendant's convictions for unlawful possession of a weapon by a felon and reckless discharge of a firearm.

¶ 2    The defendant, Dominick V. Johnson, appeals from his convictions for unlawful possession of a weapon by a felon (UPWF) and reckless discharge of a firearm. The defendant argues the evidence was insufficient to sustain his convictions as there was no physical evidence connecting him to any offense, he cooperated with the police, and the police conducted an inadequate investigation.

I. BACKGROUND

¶ 4        On January 1, 2022, the State filed various charges against the defendant arising from a shooting that occurred in the parking lot of the Century Point apartment complex in Glendale Heights. A jury trial was held on April 2, 2024, where the State proceeded with charges against the defendant for UPWF (720 ILCS 5/24-1.1(a) (West 2022)) and reckless discharge of a firearm (*id.* § 24-1.5(a)). The following evidence was presented.

¶ 5        Venancio Orozco testified that, at approximately 3 a.m. on January 1, 2022, he was sleeping when he heard gunshots and a man and woman arguing outside. He looked out a window. While the window had a tree in front of it, the tree did not have any leaves due to the winter season, and Orozco could see between the branches. He observed a Black man wearing a white jacket and a red hat arguing with a woman. The man ran into a neighboring apartment building. Orozco called 911. While Orozco was on the phone, he observed the man exit the building, extend his right arm perpendicular to his body, and fire a gun. Orozco was familiar with firearms and recognized the gunshot was fired from a small caliber handgun. The man ran back into the apartment building, exited again, and then was out of sight. Orozco returned to his bed and saw a spotlight come through his window. He looked out the window and saw officers speaking to individuals in the parking lot. Officer Daniel Launhardt with the Glendale Heights Police Department called Orozco over a year later. There were discrepancies in Orozco's account as to whether he was awoken by gunshots or his wife, whether he stepped outside before calling 911, and the amount of detail he provided as to what the man was wearing.

¶ 6        Flor Ugalde testified she lived in the same apartment complex, but in a different building than Orozco. On the night at issue, she was awoken by a woman shouting outside. Ugalde looked outside the window, which had an unobstructed view, and saw a woman talking on the phone and

a man was with her. The man was walking around parked vehicles. Ugalde then saw the man brandish a gun, shoot it into the air three or four times, and yell "happy mother fucking new year." The man put the gun in his jacket, and he and the woman entered a neighboring apartment building. Ugalde was able to see the man was Black but could not see his face. A few minutes later, Ugalde looked out the window and saw an officer speaking with the man and woman. Eventually, the man and woman walked away from the officer. Ugalde whistled at the officer from her window and stated the individuals he had just been speaking with were involved in the shooting. Ugalde could hear the man speaking and recognized the voice was the same as the man who shot the gun and yelled. Ugalde later went outside to the parking lot and spoke with officers about what she had seen and where the man had fired the gun.

¶ 7    Launhardt testified he responded to a call regarding gunshots fired at an apartment complex. He stated it was a busy evening with the holiday and dispatch calls were backed up. When he arrived at the scene, the defendant and Tkeyah Burgin were walking in the street. The defendant was wearing a white coat and a red hat. Launhardt asked them if they saw or heard anything, and they said they did not know what was going on. Launhardt parked his vehicle and a woman shouted down from an apartment window that the officer had just spoken with the individual who fired the gunshots. Launhardt returned to his vehicle and drove toward the defendant and Burgin. The defendant denied having or shooting a gun. Launhardt conducted a pat-down search, and no contraband was found on the defendant.

¶ 8    Sergeant Krzysztof Padyasek testified he arrived at the scene and assisted Launhardt. The defendant stated that he had driven to the apartment complex with Burgin and a friend. A search of the defendant's vehicle and Burgin's apartment revealed no contraband. The defendant told Padyasek to test him for gunshot residue but there was no test available on site. The defendant's

3

record showed a felony conviction for unlawful possession of a stolen motor vehicle. Padyasek spoke with a family leaving one of the apartment buildings and they denied seeing or hearing anything. Padyasek also spoke with an individual through a window on the third floor of the apartment building who stated the man fired the gunshots from the other side of the road by the parking spaces. Padyasek went to the area and found a shell casing. Approximately one hour later, officers secured the scene and found a pistol near the front right tire of a vehicle and a total of four shell casings. Launhardt was able to remove the magazine and live round after some difficulty.

¶ 9       Launhardt testified, while at the police station, the defendant continued to deny discharging a firearm. However, the defendant stated he heard gunshots, which was contrary to what he had said at the scene. The defendant was transported to jail, and while in the transport vehicle stated, "Who would want to go through that for something they didn't do? Even if I did *** shot [*sic*] the gun off, there was no intent to harm nobody, *** that's what people do on New Year's." The firearm was later released to Launhardt for testing at a shooting range. He was able to fire the weapon without difficulty but at times the rounds and shell casings would not eject properly. Denise Young, a latent print examiner, testified she examined the firearm, magazine, and live round of ammunition and did not find any latent prints suitable for comparison.

¶ 10      During deliberations, the jury sent a note and asked: (1) Where did the first officer encounter the defendant in the State's exhibit No. 1 (a photograph of an aerial view of the apartment complex) and (2) Did Ugalde's corner apartment have a window facing where the defendant was apprehended. The court responded that the questions concerned the facts and it was for the jury to determine based upon the evidence presented. The jury returned a guilty verdict on both counts. The defendant filed a posttrial motion, which was denied. The court sentenced the defendant to a concurrent sentence of three years and six months' imprisonment for UPWF and

4

two years' imprisonment for reckless discharge of a firearm. The defendant filed a motion to reconsider the sentence, which the court denied. The defendant appeals.

¶ 11                                                    II. ANALYSIS

¶ 12        On appeal, the defendant argues the evidence was insufficient to prove his guilt of both UPWF and reckless discharge of a firearm. Specifically, he contends there was no physical evidence connecting him to any offense, he cooperated with the police, and the police conducted an inadequate investigation.

¶ 13        When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Jones*, 2023 IL 127810, ¶ 28. "Where the finding of the defendant's guilt depends on eyewitness testimony, a reviewing court must decide whether a fact-finder could reasonably accept the testimony as true beyond a reasonable doubt." *People v. Gray*, 2017 IL 120958, ¶ 36. While we give great deference to the fact finder's determination of witness credibility, it is neither conclusive nor binding. *Id.* ¶ 35. A conviction will not be reversed unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Cline*, 2022 IL 126383, ¶ 25.

¶ 14        For UPWF, the State was required to prove the defendant (1) knowingly possessed a firearm and (2) had previously been convicted of a qualifying felony offense. See 720 ILCS 5/24-1.1(a) (West 2022). The elements of reckless discharge of a firearm require that the defendant (1) discharged a firearm in a reckless manner and (2) in doing so, endangered the bodily safety of an individual. See *id.* § 24-1.5(a). Here, the defendant argues the evidence failed to support that he possessed and discharged a firearm.

¶ 15 We conclude the evidence was sufficient to establish both offenses. The evidence demonstrated that two eyewitnesses, Orozco and Ugalde, had unobstructed views from their apartment windows and identified a man wearing a white jacket and a red hat firing gunshots in a parking lot. There was no evidence demonstrating any individuals other than the defendant and the woman were in the parking lot at that time. Ugalde heard the defendant say "happy mother fucking new year" when several gunshots were fired, and she identified it was the same man who was speaking with the officers based off his voice. Ugalde's account of events was corroborated by the officers' discovery of the firearm and shell casings in the parking lot where she said the shooting occurred. While the defendant takes issue with slight discrepancies with Orozco's and Ugalde's testimony, it was for the jury to weigh the evidence and determine the credibility of witnesses (see *People v. Jackson*, 2020 IL 124112, ¶ 64) and we conclude the jury could accept this testimony as true beyond a reasonable doubt (*Gray*, 2017 IL 120958, ¶ 36).

¶ 16 Further, when the defendant was being transported to jail, he stated, "Who would want to go through that for something they didn't do. Even if I did *** shot [*sic*] the gun off, there was no intent to harm nobody, *** that's what people do on New Year's." This statement demonstrated his belief that the firing of gunshots was a New Year's celebration, which was supported by the statement Ugalde heard when the gunshots were fired, and his intent to not harm anyone. We also note, the type of firearm found by the police, a pistol, was consistent with the type of firearm Orozco heard. Ugalde testified the man fired several gunshots, and four shell casings were found in the area. While Launhardt testified that he had difficulty with the firearm in some respects, he was able to fire it, and his testimony did not demonstrate that the eyewitnesses' accounts of the gunshots fired were unlikely. Accordingly, while viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the defendant guilty of both offenses.

¶ 17    In reaching this conclusion, we first reject the defendant's position that the evidence was insufficient because no physical evidence connected him to any offense. Physical evidence is not required to sustain a conviction, and "the testimony of a single witness is sufficient to sustain a conviction if the testimony is positive and credible, even if it is contradicted by the defendant." *People v. Harris*, 2018 IL 121932, ¶ 27. For the reasons already explained, the identification testimony provided was credible despite the defendant's attempts to demonstrate contradiction. The defendant also points to the questions submitted by the jury during deliberations and argues the jury questioned the identity of the shooter. This is not significant as the jury resolved any questions it had and unanimously decided the defendant's guilt.

¶ 18    The defendant also argues he cooperated with the police and maintained his innocence. Any cooperation by the defendant was belied by his statement indicative of guilt pertaining to shooting a firearm in celebration and an intent not to harm. Further, while the defendant initially told Launhardt that he did not know what was going on, the defendant later stated that he heard gunshots when he was at the apartment complex. It was for the jury to decide whether these statements were motivated by guilt or innocence. As a final matter, we also disagree with the defendant that the police conducted an inadequate investigation. While the police did not conduct an immediate and extensive investigation due to the holiday's high call volume, the evidence presented at trial was nevertheless sufficient to sustain the defendant's conviction. The officers were not required to take certain investigatory steps suggested by the defendant, such as conduct a photographic array or lineup, speak with management of the apartment complex, locate the owners of the vehicles where the shell casings were found, obtain the names of the family who was leaving the area who denied seeing anything, or take a written statement from Ugalde.

¶ 19                                    III. CONCLUSION

¶ 20     The judgment of the circuit court of Du Page County is affirmed.

¶ 21     Affirmed.